IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALMA KEC,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.
1:16-CV-1113-LTW

**ORDER AND OPINION ON AN APPEAL FROM A
<u>SOCIAL SECURITY DISABILITY ACTION</u>[1]**

Plaintiff filed an application for a period of disability and disability insurance benefits (together "disability benefits"), alleging she became disabled in July 2012. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claims.

On August 13, 2013, Plaintiff filed an application for a disability benefits, alleging disability beginning on July 27, 2012, due to herniated disks of the cervical and lumbar spine with radiculopathy and stenosis, causing pain in her neck and right arm; degenerative disc disease and lumbar spondylolisthesis; kidney stones; and gall bladder problems. (Transcript ("Tr.") 20, 60, 139-40, 168). After Plaintiff's applications were

---

[1] The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (<u>See</u> Sept. 12, 2016 Doc. Entry). Therefore, this Order constitutes a Final Order of the Court.

denied initially and upon reconsideration (Tr. 69-78, 88), on October 24, 2013, Plaintiff appealed the denial to an Administrative Law Judge ("ALJ") (Tr. 89), who held a hearing on November 13, 2014 (Tr. 32-59), and ultimately denied Plaintiff's claims on December 9, 2014, finding Plaintiff was not disabled (Tr. 15-31). Plaintiff appealed the ALJ's decision to the Appeals Council in early 2015 (Tr. 5-14), which denied Plaintiff's request for review on February 2, 2016 (Tr. 1-4). Plaintiff then appealed the decision to this Court on April 6, 2016. (Doc. 1). This case is now before the undersigned upon the administrative record and the parties' pleadings and briefs, and is ripe for review pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the decision of the Commissioner is hereby **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four for further proceedings consistent with this opinion.

## I.   STANDARD FOR DETERMINING DISABILITY

An individual is considered to be disabled for purposes of disability benefits if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities that are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable

2

to do his or her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B)-(G); see also 42 U.S.C. § 423(d)(2)-(3).

The burden of proof in a social security disability case is divided between the claimant and the Commissioner. The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that he or she is unable to perform his or her former type of work. Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience, and impairment, there are some other types of jobs that exist in the national economy that the claimant can perform. The overall burden, however, rests upon the claimant to prove that he or she is unable to engage in any substantial gainful activity that exists in the national economy. Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

As summarized below, a five-step sequential analysis must be used when evaluating a disability claim.

(1) The Commissioner must determine whether the applicant is currently working; if so, the claim is denied.

(2) The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments significantly limits the individual's physical or mental ability to do basic work activities; if not, the claim is denied.

(3) The Commissioner must determine whether the impairment equals or exceeds in severity certain impairments described in the impairment listings in the regulations; if it does, the claimant is automatically entitled to disability benefits.

(4) The Commissioner must determine whether the applicant has sufficient

residual functional capacity to perform past work; if so, the claim is denied.

(5) The Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other gainful and substantial work within the economy; if so, the claim is denied.

See 20 C.F.R. §§ 404.1520-404.1576.

## II. **FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE ALJ**

The ALJ made the following findings of fact and conclusions of law:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

(2) The claimant has not engaged in substantial gainful activity since July 27, 2012, the alleged onset date (20 C.F.R. §§ 404.1571, et seq.).

(3) The claimant has the following severe impairments: degenerative disc disease of the cervical spine (with radiculopathy and stenonsis); degenerative disc disease of the lumbar spine (with spondylolisthesis); and obesity (20 C.F.R. § 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404. 1520(d), 404.1525, 404.1526).

(5) The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant would be limited to frequent but not constant reaching in all directions bilaterally; would require a sit/stand adjustment option but would not be off task; the claimant would be limited in occupations in which she could sit and stand or adjust the body for comfort without a loss of production, but no more than every two hours.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7) The claimant was born on November 26, 1970, and was forty-one years old, which is defined as a younger individual age eighteen to forty-nine, on the

alleged disability onset date (20 C.F.R. § 404.1563).

(7) The claimant has at least a high school education, and is able to communicate in English (20 C.F.R. § 404.1564).

(8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41; 20 C.F.R. pt. 404, subpt. P, app. 2).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).

(10) The claimant has not been under a disability, as defined in the Social Security Act, from July 27, 2012, through the date of this decision (20 C.F.R. § 404.1520(g)).

(Tr. 15-31).

## III. CLAIMS OF ERROR

Plaintiff alleges the decision of the Commissioner is in error for the reasons set forth below:

1. The ALJ erred by failing to discuss opinions of Plaintiff's treating physician Dr. Kamal Kabakibou and/or to provide good cause for discounting that treating physician's opinion.

2. The ALJ's erred in failing to provide sufficient reasons for discrediting Plaintiff's testimony regarding her pain and functional limitations.

3. The ALJ's RFC determination was not based upon substantial evidence.

(Doc. 7).

## IV. SCOPE OF JUDICIAL REVIEW

The scope of judicial review of the Commissioner's denial of social security

5

benefits is limited.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  The only function of the court is to determine whether there is substantial evidence in the record to support the findings and decision of the Commissioner and whether proper legal standards were applied in the fact-finding process.  The Commissioner's findings are conclusive if supported by substantial evidence and proper legal standards were applied.  Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239.  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  In contrast, our review of the ALJ's application of legal principles is plenary.  Walker, 826 F.2d at 999.  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence, even if the evidence preponderates against the

6

Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## V. BACKGROUND FACTS

Plaintiff was forty-one years old at the alleged onset date of her disability and forty-four years old when the ALJ issued his decision. (Tr. 15, 139). Plaintiff completed twelve years of school in Bosnia. (Tr. 52-53, 127). While English was not Plaintiff's primary language, she could read, write, and understand English. (Id.). Plaintiff has previously worked as a cashier, machine packager, material handler, stock selector, and data entry clerk. (Id.).

Plaintiff testified that she had significant pain – eight out of ten – in her neck and right shoulder/upper arm after she suffered a slip-and-fall at work in July 2012. (Tr. 39, 217). Plaintiff explained that as a result of pain and nerve damage, she had almost no use of her right arm, limited use of her left arm, and limited use of her hands and/or fingers; and she further testified that she could not sit for more than 15 to 30 minutes without significant pain. (Tr. 39, 42, 44-45, 49).

Following her injury, Plaintiff presented to physician Dr. Tamara Chachashvili and reported cervical pain radiating down to her left shoulder and upper extremity with paresthesia. (Tr. 231-35). Dr. Chachashvili diagnosed Plaintiff with left cervical radicular syndrome and degenerative spondylosis at three different vertabrae (Tr. 232), and treated her in the following months with physical therapy, prescription pain medication (including narcotics), epidural steroid injections, and cervical facet joint

7

injections (nerve blocking injections). (Tr. 224-250). Without observing improvement in Plaintiff's pain, Dr. Chachashvili referred Plaintiff for a consultation with an orthopedic surgeon. (Tr. 224-27).

Plaintiff subsequently sought treatment from orthopedic surgeon Dr. Erik Bendiks starting in December 2012. (Tr. 217). On exam, Dr. Bendiks found Plaintiff to have reduced range of motion in the cervical spine, as well as pain at the terminal ranges and a loss of reflex and decreased sensation for the right arm, including the upper arm, forearm, and fingers. (Tr. 218). Dr. Bendiks recommended Plaintiff live with her pain or else consider artificial disc replacement C4-C5 and anterior cervical discectomy and fusion at C5-C7. (Tr. 218). Plaintiff reported that her pain – still eight out of ten – was uncontrolled; that she was unable to sleep; and that despite multiple attempts, she could not return to even light duty work. (Tr. 217).

In January 2013, Plaintiff presented to orthopedic surgeon Dr. Edward Middlebrooks for consultation. (Tr. 222). On exam, Dr. Middlebrooks observed Plaintiff to have difficulty with her right arm secondary to pain and reduced range of motion in her cervical spine. (Tr. 222). Like Dr. Bendiks, Dr. Middlebrooks recommended artificial disc replacement and/or anterior cervical discectomy and fusion. (Tr. 223). In March 2013, Dr. Middlebrooks found Plaintiff to have tenderness to the right paraspinal region of her cervical spine and decreased right rotation and minor paresthesia in the right upper arm. (Tr. 221). Dr. Middlebrooks prescribed narcotic pain medication; and in consultation with Plaintiff and her husband, planned to proceed with

8

surgical intervention. (Id.).

Soon thereafter, Plaintiff presented for a preoperative evaluation and reported neck pain with intermittent right shoulder pain. (Tr. 238-40). For an unexplained reason – not addressed during her hearing before the ALJ, nor apparently elsewhere in the record – Plaintiff did not actually follow through with surgery. (Tr. 37, 42).

In late 2012 and early 2013, Plaintiff appears to have made two separate trips to the emergency room due to pain despite the narcotic pain medications she was taking at the time. (Tr. 45, 250-51).

Instead of surgery, in June 2013, Plaintiff began treatment with Dr. Kamal Kabakibou for pain management. (Tr. 260-62). Among other things, Plaintiff complained of constant pain – still eight or nine out of ten – in her neck, upper extremities, and lower back; and that she still could not sleep. (Tr. 261). In July 2013, Dr. Kabakibou completed an assessment of Plaintiff, opining among other things that – reasonably consistent with her medical history and objective medical testing – she could not stand for more than two hours in a workday, could not lift more than tens pounds, could not use her arms and hands more than occasionally throughout a workday, and would need to alternate positions often to avoid strain on her neck and back. (Tr. 286-87).

Dr. Kabakibou continued to treat Plaintiff. Between August 2013 and October 2014, Dr. Kabakibou treated Plaintiff at least six times. (Tr. 272-73, 288-96). Plaintiff continued to report pain of eight or nine out of ten, had a decreased range of motion, and

9

increased pain with flexion, rotation, and extension of her back and arms; and Dr. Kabakibou continued to prescribe narcotic pain medication and steroids for Plaintiff, and recommended that she not return to work (and/or that she was not able to return to work). (Tr. 261, 290-96). Although the medication improved Plaintiff's pain symptoms, Dr. Kabakibou noted that the medication left her dizzy, tired, and sleepy. (Tr. 288-96).

In September 2014, Dr. Kabakibou completed another assessment of Plaintiff's limitations, in agreement with his original assessment. (Tr. 284-85). In particular, Dr. Kabakibou continued to opine that Plaintiff could not stand for more than two hours in a workday, would need to rest every 30 minutes, could only use her arms and hands occasionally throughout a workday, and would likely miss at least four workdays each month due to her pain. (Tr. 284-85).

The remaining medical evidence has been summarized in the body of the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## VI. **ANALYSIS OF CLAIMS OF ERROR**

Plaintiff alleges a number of errors including, the ALJ erred in determining Plaintiff's residual functional capacity, and the ALJ failed to give controlling weight to the treating physician's opinion regarding Plaintiff's ability to do work-related activities. Because the ALJ failed to properly assess the opinions of Dr. Kabakibou, Plaintiff's treating physician, remand is warranted.

### A. **Opinion Evidence of Dr. Kamal Kabakibou**

An ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)); see also McCloud v. Barnhart, 166 F. App'x 410, 418 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why.") (internal citations omitted). The failure of an ALJ to specify what weight is given to a treating physician's opinion or the reasons for giving it less weight is reversible error. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987) (citing MacGregor, 786 F.2d at 1053). This is the case because a reviewing court, "cannot [] conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985) (citing Owens v. Heckler, 748 F.2d 1511 (11th Cir.1984) and Hudson v. Heckler, 755 F.2d 781 (11th Cir.1985)).[2]

The law of this circuit is also clear that the testimony of a treating physician must be given "substantial" or "considerable" weight unless "good cause" is shown to the

---

[2] Moreover, generally speaking, in assigning weight to medical source opinions, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(d)(1)-(2), (5).

11

contrary. Johns v. Bowen, 821 F.2d 551, 554 (11th Cir. 1987) (citing Broughton, 776 F.2d at 961). A similar preference for the opinions of treating doctors is found in the Social Security regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ can reject a treating physician's report if it is not accompanied by objective medical evidence, is wholly conclusory, lacks persuasive weight, or where the evidence supports a contrary conclusion. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)); 20 C.F.R. §§ 404.1527, 416.927. If, however, the ALJ gives less weight to the opinion of a treating physician, he must clearly and specifically articulate the reasons for doing so, and the failure to do so is reversible error. See Prince v. Comm'r of Soc. Sec., 551 F. App'x 967, 970 (11th Cir. 2014); Adamo v. Comm'r of Soc. Sec., 365 F. App'x 209, 213 (11th Cir. Feb. 12, 2010); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (explaining that a treating physician's opinion may be properly discounted if the ALJ articulates specific justification for doing so); Lewis v. Callahan, 125 F.3d 1436, 1440-41 (11th Cir. 1997).

In this case, Plaintiff contends that the ALJ's consideration of her physical impairments and complaints of pain is inadequate because the ALJ not only failed to

12

consider Dr. Kabakibou's treating relationship with Plaintiff, but also overlooked Dr. Kabakibou's September 2014 assessment of Plaintiff's pain and limitations. The Court agrees. The ALJ appears to be confused not only about Plaintiff's relationship with Dr. Kabakibou but also about the basic information contained in Dr. Kabakibou's records.

By way of explanation, before discussing Plaintiff's relationship with Dr. Kabakibou, the ALJ simply gave Dr. Kabakibou's July 2013 assessment only "partial weight" because Dr. Kabakibou had only seen Plaintiff once when he made the assessment (and was therefore not a treating physician at that time), and because it was based upon Plaintiff's subjective complaints and as a general matter was "not supported and [] inconsistent with the [other] evidence of record." (Tr. 24). Next, the ALJ described Dr. Kabakibou's range of motion assessment from the following month, August 2013, as that of the "Treating Physician Kamal Kabakibou,"[3] but failed to discuss in detail any of the limitations noted or the weight given to Dr. Kabakibou's assessment. (Tr. 24). Finally, the ALJ briefly mentioned that Plaintiff was seen repeatedly in 2014, but ignored the fact that the continuing treatment between 2013 and 2014 was provided by Dr. Kabakibou, and altogether failed to acknowledge Dr. Kabakibou's September 2014 assessment of Plaintiff's pain and limitations.[4]  (Tr. 24-

---

[3] Based on the language of the decision, it is not entirely clear that the ALJ understood the July and August 2013 assessments to have been made by the same doctor.

[4] The Commissioner suggests that the ALJ considered the September 2014 assessment and assigned it partial weight; however, the ALJ's decision makes clear that partial weight was assigned only to the July 2013 assessment. The ALJ did not

13

25). This Court cannot determine whether the Court even considered Dr. Kabakibou's September 2014 assessment of Plaintiff's pain and work-related limitations, much less the weight given to it or the reasons it might have been given less than considerable weight.[5]

Although the Commissioner dedicates many pages of her brief to describing the findings contained in the various medical opinions – including Dr. Kabakibou's records and opinions from 2014 – and providing reasons why less weight could have been given to those opinions corroborating Plaintiff's complaints of pain, this is fundamentally a post-hoc attempt to cure the deficiencies contained in the ALJ's decision and minimize the Commissioner's oversights. Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir.1984)

---

discuss any of Dr. Kabakibou's other medical records until after assigning partial weigh to the July 2013 assessment, explaining why such weight was provided, and moving on to discuss and evaluate other medical evidence of record. (See Tr. 24-25). Moreover, while the Commissioner states that the "ALJ cited the [September 2014] questionnaire in his decision and specifically discussed the limitations," this statement is mistaken at best and disingenuous at worst. (Doc. 8, p. 11). While ALJ generally cited two pages of Dr. Kabakibou's treatment notes from 2014, the ALJ did not cite the September 2014 assessment, did not acknowledge the treatment notes as records from Dr. Kabakibou, and did not assign any weight to them whatsoever. (Tr. 24-25).

[5] Beyond ignoring significant medical opinion evidence from Dr. Kabakibou, the ALJ also misstated or mischaracterized the medical evidence of Dr. Kabakibou that was acknowledged as well. For instance, the ALJ stated the medications prescribed to Plaintiff "were helpful ing relieving her [pain] symptomatology without any side effects" (Tr. 24-25); however, Dr. Kabakibou's records clearly indicated that "[t]he medication causes dizziness," and left Plaintiff "tired and sleepy." (Tr. 288-96). Similarly, the ALJ focused on the motor strength and lack of swelling in Plaintiff's extremities (Tr. 25), but did not acknowledge the tenderness, muscle spams, decreased range of motion, and pain with rotation in her back and arms discussed by Dr. Kabakibou. (See Tr. 288-96).

14

(noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"); Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 834 (11th Cir. 2011) (holding that the ALJ must state with particularity the weight given to different medical opinions and his reasons therefore and that where the ALJ fails to state the reasons with some measure of clarity, the court cannot affirm simply because some rationale may have supported the ALJ's decision) (citing Owens, 748 F.2d 1511, 1516 (11th Cir. 1984)). As noted above, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam ) (citing Bloodsworth, 703 F.2d at 1239). While the Commissioner, and this Court, may be able to locate support for the ALJ's reasoning in the record, "[a] reviewing court may not substitute its judgment for that of the Commissioner's to provide an adequate explanation where none has been provided." See, e.g., Freeman v. Comm'r of Soc. Sec., No. 8:13-CV-732-T-MCR, 2013 WL 6244527, at *7 (M.D. Fla. Dec. 3, 2013); see also Davis v. Comm'r of Soc. Sec., 449 F. App'x 828, 833 (11th Cir. 2011) (explaining that the "ALJ must clearly articulate his reasons for disregarding the treating physician" and that the ALJ's decision will not be affirmed without adequate explanation because, without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence"); Lawton, 431 F. App'x at 834 (holding that the ALJ must state with particularity the weight given to different medical opinions and his

15

reasons therefore and that where the ALJ fails to state the reasons with some measure of clarity, the court cannot affirm simply because some rationale may have supported the ALJ's decision); Stroman v. Astrue, No. 08-22881-CV, 2009 WL 3669640, at *4 (S.D. Fla. Nov. 4, 2009).[6]

Additionally, the Commissioner's arguments that Dr. Kabakibou's opinions should be disregarded as the mere transcription of Plaintiff's subjective complaints[7] is without merit. First, there is no factual or legal support for the argument that the records are nothing but a record of Plaintiff's subjective complaints. In particular, the treatment notes reflect the Dr. Kabakibou's judgment that Plaintiff was experiencing pain and had limitations based upon objectively identified underlying impairments and objective

---

[6] While the ALJ did not subscribe greater meaning to Plaintiff's decision to abstain from surgical intervention, the Court does acknowledge that the Eleventh Circuit has stated that "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (quoting Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987)); see also Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993) (citing Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that a symptom reasonably controlled by medication or treatment is not disabling). On the other hand, there are treatment notes indicating Plaintiff's inability to afford certain treatments. (See e.g., Tr. 288 (Plaintiff "cannot afford to go back to see this doctor.")). Such noncompliance – ground in poverty and/or the inability to afford treatment – is excused from the disability determination. Dawkins, 848 F.2d at 1213; see also Belle v. Barnhart, 129 F. App'x 55, 560 n.1 (11th Cir. 2005) ("if one's disability could be cured by certain treatment, yet treatment is not financially available, then a condition which is disabling in fact continues to be disabling in law.").

[7] While the ALJ did not provide reasons for rejecting Dr. Kabakibou's September 2014 assessment, this was a basis for the ALJ's rejection of Dr. Kabakibou's initial July 2013 assessment.

16

observation and evaluation. (See Tr. 288-96 (assessing Plaintiff as suffering from cervical and lumbar intervertebral disc disorder with myelopathy, and noting tenderness and decreased range of motion in the cervical spine and shoulders, along with muscle spasms and increased pain with rotation); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Second, the Commissioner's argument that some of Dr. Kabakibou's opinions concern matters reserved to the Commissioner (i.e. whether Plaintiff is able to work) fails because while such opinions are not binding on an ALJ, Garred v. Astrue, 383 F. App'x 820, 822 (11th Cir. 2010), they nevertheless "must never be ignored, and the . . . [ALJ's] decision must explain the consideration given." SSR 96-5p, 1996 WL 374183, *3 (July 2, 1996); Williams v. Comm'r of Soc. Sec., No. CV406-19, 2008 WL 591288 (S.D. Ga. Mar. 3, 2008) (citing SSR 96-5p). Third and finally, it is obvious that Dr. Kabakibou's conclusion that Plaintiff cannot return to work is in conflict with the ALJ's RFC determination.

In this case, because the ALJ did not discuss the opinions contained in the September 2014 assessment by Dr. Kabakibou and appears confused about Dr. Kabakibou's treatment relationship with Plaintiff, it is clear that the ALJ could not have properly evaluated or credited Dr. Kabakibou's opinions about Plaintiff's pain and limitations. Without articulating good cause for disregarding or rejecting Dr. Kabakibou's opinions, the ALJ's decision is subject to reversal, and the Court cannot now excuse this error as harmless based on the Commissioner's post-hoc assessment of the record.

17

Accordingly, this case is subject to **REVERSAL AND REMAND** in order for the ALJ to properly state the weight given to the different medical opinions and the reasons therefor. The Court is mindful of the difficulties in evaluating a claimant's impairments and weighing the medical opinions that appear in an administrative record. Nevertheless, the law requires the Commissioner to provide a well reasoned and articulated decision, without which courts are unable to provide claimants with a sound, meaningful review of the administrative decision. Upon remand, the ALJ shall at a minimum state the weight accorded all medical source opinions relied upon in determining Plaintiff's RFC, and the reasons for determining such.

### B.     Plaintiff's Credibility and the ALJ's RFC Formulation

Because the Commissioner's decision is subject to reversal and remand for these reasons, the Court need not address Plaintiff's other arguments. Indeed, the extent to which the ALJ credits Dr. Kabakibou's later opinions contained in his treatment notes and the September 2014 assessment will likely inform the extent to which the ALJ credits Plaintiff's own testimony regarding her pain and limitations as well as his formulation of Plaintiff's RFC. The Court does note that upon remand, "[i]f the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995). While the Eleventh Circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court. Id. at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). As with the ALJ's review of medical

18

opinion evidence, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Id. at 1562; see also Marbury, 957 F.2d at 839 ("ALJ may reject [subjective complaints] as not credible, and that determination will be reviewed for substantial evidence").

## **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is hereby **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four for further proceedings consistent with this opinion..

**SO ORDERED** this ___19___ day of September, 2017.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)